Please call the first case. Case No. 14-6198, Bruce Merrick et al. v. Diageo Americas Supply Inc. Argument number C, 15 minutes to decide. Mr. Shores, you may be seated. Mr. Shores. Good afternoon, Your Honors. Ryan Shores with Huntman Williams on behalf of appellant Diageo, and may it please the Court. Your Honors, this is one of a series of nuisance lawsuits challenging ethanol emissions from various whiskey aging facilities in Kentucky. Instead of participating in the Clean Air Act's regulatory process, these plaintiffs want Kentucky judges and juries to regulate the whiskey industry in Kentucky on a case-by-case basis, through vague nuisance principles, and without any regard for the Clean Air Act or the expert agency's views under the Act. This presents the real possibility that whiskey aging facilities just miles from each other could be subject to very different regulation. That's antithetical to what the Supreme Court said in its 2011 American Electric Power decision, where it made clear that patchwork judicial regulation is not consistent with the Clean Air Act's design. Now, instead of facing the conflict question, the hard questions about whether plaintiffs' claims conflict with the Clean Air Act, the district court here adopted what is effectively a safe harbor. It adopted a categorical rule that so-called source state common law claims, claims based on the law of where the state is located, where the source is located, I'm sorry, are exempt from conflict preemption analysis. That was a legal error, and that legal error drove the district court's judgment here. No case cited by the district court, including Ouellette or Her Majesty, supports such a safe harbor, nor can any exemption from ordinary conflict preemption principles be consistent with the supremacy clause, which says that all state laws, no matter their source, that are inconsistent with Federal law, are preempted. And where's the inconsistency? Well, the inconsistency, Your Honor, is in a number of ways that we detailed in our briefs. Number one, AEP makes clear that courts are not to be the primary regulators under the Clean Air Act. That's the job of agencies. I'm concerned about consistency in the statutory schemes. I'm sorry, the statutory schemes? Or the state scheme versus the Federal scheme. What's inconsistent about it? Why can't they both apply? Well, because, Your Honor, the Clean Air Act reflects a very careful judgment that regulators, agencies, are supposed to determine the appropriate amount of regulation based on what AEP says. But is there anything in there that says that that's to exclude state regulation? I mean, it could be very detailed, have a lot of public input, and still be superseding or adding to whatever the state had in place before it was passed. It could be. Or it could be that the Federal statute was designed to start on a clean slate and say, this is the totality, it's burdensome on regulated parties, and therefore we don't want any additional burdens, and so we don't want that. But both schemes could have been the intent of Congress. What shows that it's one rather than the other? That's my question. Well, it's not necessarily one rather than the other. Indeed, the state. Well, you're arguing that this Clean Air Act doesn't allow state regulation of the same thing. The other possibility is that it doesn't — that it just adds obligations but doesn't subtract obligations. You're arguing one side, the other side says, is that right? Am I understanding the issue correctly? Well, Your Honor, I would put it differently. I think the states' rights savings clause in the Clean Air Act makes very clear that states can make judgments about adding additional regulation beyond what's in the Clean Air Act. That provision says states or subdivisions thereof, political subdivisions thereof, can make conscious judgments to add to the regulatory scheme under the Clean Air Act. That's very different than saying courts can impose retrospective liability under the Clean Air Act. And, you know, Your Honor, I would point you to others. Why is it different? Because part of the — You're looking at the language of the statute. That's what I'm having trouble with. Well, if you look at the language of the statute, Your Honor, I'll read it. It says, nothing in this chapter shall preclude or deny the right of any state or political subdivision thereof, any state or political subdivision thereof, to adopt or enforce any standard or limitation respecting emissions and air pollution. And isn't a court that imposes standards? Well, I — An action of the state that imposes — I mean, people have been describing court laws imposing court standards. I mean, it fits with the language. I think the important language here, Your Honor, is state or political subdivision. And that's language that's used throughout the — It's only disjunctive, so it would be any state, right? Well, it could be state or political subdivision. Let's just look at state for the moment. Okay. Why couldn't a state impose a standard or limitation respecting emissions through nuisance? Maybe you have a statute that gives the courts the power to impose the restatement of nuisance. Would that work? It possibly could, Your Honor, because it's very clear that a state, that is, a state legislature or an agency, could say we want to have a role for courts. In fact, that's the very facts in Her Majesty. Michigan made a specific judgment. So it would be okay for courts to do it on a retrospective basis as long as there was a statute? Well, if the Kentucky legislature made the judgment that they want to supplement the Clean Air Act in that way, but that's absolutely not the case here. Why does it make a difference whether the Constitution of Kentucky does that rather than the legislature? Well, I think what's important here is there are Kentucky statutes in which the legislature has expressed the very specific judgment that there should be no regulation. Are you relying on those statutes? We are. Do you do this without them? Well, I think they express the legislature's intent about what it wanted in terms of the legislature. But we're talking about the meaning of the Clean Air Act here, right, not the meaning of the statutes that it might preempt. But, Your Honor, I think you have to look at both of them together because the meaning of the Clean Air Act is that States or political subdivisions, that is, State legislatures or agencies, can enact positive requirements beyond the Clean Air Act. And we don't dispute, as was the case in your matter. But you do say that they can't do it by common law retrospective adjudication. Well, at least. But now you say they can do it by common law retrospective adjudication. If there's a statute that says they can do it by common law retrospective, it wouldn't be common law anymore, but by the, I don't know, incorporation of common law by statute, then it would be okay? Well, I think, Your Honor, again. That's a yes or no question. Your Honor, they could. The Kentucky legislature could. So the real thing that you're reading into this language is that Kentucky could do what it's doing now or what Kentucky could have, the nuisance law that is being relied on now, as long as it was provided by a statute, but not if it's just part of the constitutional structure of the State of Kentucky. Well, Your Honor, what I would say is, again, if the State legislature makes an affirmative judgment to supplement the Clean Air Act. That's my question. It's a hypothetical question. Yes, they could do that, Your Honor. Isn't that kind of a strange thing to read into this language is that the State could do it, but it can't do it by courts which have power under the Constitution, but it could do it by courts which are authorized to do it by statute? I don't think it's strange at all, Your Honor, and I think Her Majesty is a good example of that. I mean, the State made a specific judgment that it wanted to have a cause of action that involved courts, but that wasn't the blunt instrument of common law. That was a very circumscribed cause of action. In fact, that statute allows courts. Well, you see the difficulty I'm having with reading into the words, State may adopt and enforce, reading into that that a State can do it by legislation but can't do it by action of the States pursuant to State constitutional authorization. Well, I think what the Clean Air Act. Do you see why that's problematic? I mean, you see the difficulty. I mean, that's what you need to address, I think. Well, what I would again, what I would say, Your Honor, is when the Clean Air Act was enacted, what was anticipated was that States would come behind that, States legislatures would come behind that and make some type of specific judgment about how to supplement the Clean Air Act. So it's like timeliness? Is that what it is? What was there before can't be supplemented with something that comes afterwards? Is that the difference? Well, I think if there's some judgment to incorporate what was there before, that could matter, but I don't think it should be just read into, read into, you know, the statutory scheme that there are these nuisance provisions just because they were preexisting, especially again. What's your best case that you're relying upon to show the preemption here? Is it Her Majesty or some other case? Well, I think the best case here, Your Honor, for our position is American Electric Power combined with TPA. American Electric Power. But wasn't that a Federal common law case? And when you have Federalism, you can understand that there might be a conflict between Federal statutory law and Federal common law. But we're talking about rights that have been retained inherently by the State. So why isn't that a complete distinction that explains how ALET and AEP are conversant with one another and work well together? Yes, Your Honor. That was a displacement case, and we don't dispute that, and the standards are different between displacement and preemption for some of the reasons you're saying. But I think the fundamental point is that the conflicts are no different. And what the Supreme Court was saying in AEP — I'm struggling with understanding that. When you have two entities within one sovereign, statutory law and common law within the Federal sovereignty, why isn't it different when you have two separate sovereigns? And it seems to me that the Act itself, in the language of its findings and purposes, specifically addressed that issue. I'm struggling with Section 704 that says that it's the Federal regulation of air pollution is necessary, obviously, because of the borderless nature of air pollution, but that the primary purpose of the CAA is reasonable Federal, State, and local government actions for pollution prevention. Why doesn't that presume cooperative Federalism that provides to the State the right as a separate sovereign to enforce its own constitutional laws, tort laws, common laws, as well as statutory laws? Well, there's no doubt that the Clean Air Act is a cooperative Federalism statute. Our position embraces that, Your Honor. But, again, I think it goes to the State. How so if you think, if you're not making a distinction within the Federal system as distinct from the State system? It seems to me that that's a significant distinction that would support the right of a State to take its actions in whatever context the State wants to act. And I think that's the important point, is that the State has to act. The State or the political subdivision, as evidenced by the State's Rights Savings Clause, has to express that judgment, Your Honor. I don't think you can really ---- Why isn't the existing nuisance law an expression of that judgment? Because, Your Honor, again, it goes back to what the Savings Clause itself says, that positive regulation, nothing in this chapter shall prevent a State or political subdivision thereof to adopt or enforce any standard limitation. That's language most naturally read as positive regulation, additional regulation to what's in the Clean Air Act. It's not just positive. You're saying it has to be subsequent. Well, I think that's some evidence of being positive, is that State has thought about this. Well, I mean, but otherwise it's a pretty esoteric difference. Yes, Your Honor. I mean, they can think through their Constitution and through their framers or whatever. Sure, Your Honor. Sure, Your Honor. And I see that. But I think the critical thing about the Clean Air Act is it has to be reconciled. Conflict preemption principles have to be applied. You have to ask whether the methods of the Clean Air Act are consistent with these nuisance claims. And they're not. They're not. I mean, you have to ask those questions. And if the State wants to come along and say, hey, you know, I'm going to add some more to this, you still have to ask the question, but at least you have some positive indication of the State. How does a cooperative federalism assume the ability of the separate sovereigns to enact their own policies and procedures, which would mean that you have the statutory law at the federal level that by its stated purpose and congressional findings is for the purpose of creating a floor below which States may not go, but they are specifically authorized in the language of the statute and quite obviously in the legislative history to do something more stringent than that? Yes. So why do you, what in this statutory structure leads you to believe that that right is limited, specifically limited beyond the associated police powers that a State would need to enforce its interests? Well, again, Your Honor, I think the State's Right Savings Clause answers that question because it talks about positive regulation in State or political subdivision. But I'd also say that just makes sense from a legislative design perspective. Agencies and legislators have a duty to make coherent regulation for all the regulated facilities within their ambit. Courts have no such duty. They're adjudicating on a case-by-case basis. They have no duty to take into account the Clean Air Act at all. They have no duty to take into account what the agencies say under the Clean Air Act. I think your time is up. Am I correct? Yes, Your Honor. Thank you. Unless there are further questions from the Court, we'll hear from your opposing counsel. Thank you, Your Honor. May it please the Court. The arguments that we have all heard here today have been raised pretty much in every case that's been decided on preemption of clean air, clean water. But not a single case, not a single court has ever adopted the position that was taken here today, which expands even the reply brief. I truly believe that an oversight on the part of counsel with regard to responding to the Court's questions zeroes in on KRS 411-500. That is the statute that this lawsuit is filed under. In 1991, the Kentucky legislature decided to create a statutory cause of action for nuisance. And it did away with the common law to this extent. The legislature states, it is the intent of the General Assembly to restate and codify in KRS 411-500 the common law of nuisance as existing in the Commonwealth. Do you rely on this in your briefs? Yes, indeed, Your Honor. Okay. As of May 24, 1991, as a codification of the common law, the common law shall be continued by KRS 411-500, which shall apply to all actions, whether now pending or subsequently brought. Matters not specifically addressed in KRS 411-500 shall be governed by common law. This was in 1991, even after the 1990 permit amendments were made to the Clean Air Act. But going back to the history of how we got here in terms of Kentucky allowing its citizens to bring actions, we go back to 1952, when Kentucky adopted the Air Pollution Control Act. Twenty years before Kentucky would ever submit its state implementation plan to the Federal Government for approval, we had black-letter law in this State that gave every citizen the right to come into a State circuit court and obtain an injunction against any air polluter. We have always recognized that air pollution is the most common source of nuisances. It doesn't provide for damages also or just for injunctive relief. A very good point, Judge Siler. It provides only for injunctive relief. But it does provide for injunctive relief. And you can't get damages for nuisance in Kentucky? You can. But that was not a nuisance statute. This was a special statute, Chapter 77, adopted by our legislature in 1952, which remains on the books today. It allows a common citizen to go to court and enjoin any polluter who has violated any air pollution control district regulation or any other law. But there's no common law nuisance? No, no. It says nuisance. It doesn't specify common law nuisance. Did it eliminate the common law nuisance? It did not. But there's still common law nuisance. Absolutely. And you can get damages if you fit under common law nuisance. Well, what's happening? I'm asking. I don't know the answer. Is that true or not? The answer is that common law nuisance has been codified now under 411. We are required to go to court and ask the court to make a preliminary determination of whether or not what has occurred in this circumstance is a permanent or a temporary nuisance. If the conduct of the defendant can be abated, then the court will, and that is the If the court determines that it's feasible to abate the nuisance, the court will say and declare it to be a temporary nuisance and enter an injunction accordingly. If, however, the court is persuaded by the defense arguments that it's too costly or it would destroy the flavor of whiskey to put these kinds of controls on the building, the court then declares it to be a temporary nuisance. I guess my question went to whether it, how it relates to common law nuisance. You're telling me what the content of it is. I'm asking how it relates to common law nuisance. Is common law nuisance dead in Kentucky? It just doesn't exist? If it does exist, if it does, then how does telling me what this new statute does? Well, the common law nuisance exists, say, the legislature, to the extent that the statute doesn't cover any issues. And so I can tell the Court that we, at least we are in the same predicament that the plaintiffs were in in the Her Majesty the Queen case. We have a State statute that gives us a right to come into court and seek money damages and obtain an abatement order, which is the same as injunction. And that was legislative codification of the common law. But the legislature ---- But it seems to me even if you didn't have that, you would still have, then you would be left with the common law courts, which would still be State action. I'm not saying what the point is. Are you relying on that? If you didn't have that, then you would lose? No. There's no way, in my humble opinion ---- Well, I understand what your position is, but I'm trying to get the logic. Yes, sir. So under your position, it really wouldn't make too much difference whether this was statutory-based or common law-based. Is that correct? Absolutely. Because ---- What do you do, then, with the Supreme Court case, what is it, ACW or ---- AEP. What is it? AEP. AEP. AEP. I understand that case dealt with Federal common law rather than State common law. It did. But there's a lot of policy that's described in there, and much of that has to do with the idea that for businesses to undergo the kind of expense and burden, cost of regulatory burden, which is a cost to comply with the Clean Air Act, it would only make sense to if that Clean Air Act, carefully tailored as it was, was the total extent of their responsibility and it was ascertainable ahead of time. Those kind of policy concerns are elaborated in quite great detail by the Supreme Court that we have to salute. And so I can respond to that. Absolutely. And they're all important points. I want to answer your first question, and that is, with respect to whether I'm relying upon a statute or the common law, both are clearly covered by Section 7604 when it says this section shall ---- nothing in this section shall restrict any right of any person who may have under any statute or common law to seek enforcement of any emission standard or limitation. That's in the State law? That's in the Clean Air Act, but you're wrong. That's in the State law. Okay. That's the Clean Air Act Savings Clause that saves individual rights. But to answer your question about AEP, it's very important to the matter. Please answer the question. Yes, sir. With respect to AEP, the Court did go through the same concerns that Ouellette went through. Our Supreme Court in the Ouellette decision in 1987 raised every one of the very concerns you're talking about and that AEP talked about from a Federal displacement perspective. But the way this was handled by Ouellette is the way it would be handled today by the  The Federal displacement perspective would be to say, as Ouellette said, and remember, AEP tells us at the very end of that decision if you're concerned about what's going to happen with your Clean Air Act claims or your air pollution claims and whether it's going to conflict with the Clean Air Act, please see Ouellette. Ouellette says this. Application of the source State's laws does not disturb the balance among Federal, source State, and affected State interests. The restrictions of suits to those brought under source State nuisance law prevents the source State from being subject to an indeterminate number of potential regulations. Okay. I understand that. I cite one case. You cite another case. I'm wanting to know what you do with this case I'm citing. AEP. Right. Why doesn't — isn't there some weight for your opponent's argument from the policy argument as opposed to the specific holding in that case? Are you just saying it goes away because I have this other case? No. It is not relevant. How is it reconcilable? It's reconcilable because the Court's concerns were about, as Judge Strand said, whether or not it makes sense to have a Federal common law in the situation where you're involved as a result of interstate pollution, and there was no need or reason to have both a Federal common law clashing and creating expense and uncertainty for interstate pollution problems. That's not the problem in this case. This is a Kentucky plaintiff suing a Kentucky business polluter, applying Kentucky law, and nothing at all about the AEP fact pattern or its analysis of Federal displacement of Federal common law makes any application here. And it's so true that at the end of the opinion, the Court reminds everyone that no one briefed the issue of whether the other claims by the claimants, and those were the common law nuisance claims, were going to be preempted by the Clean Air Act. And the Court says as follows in AEP, in light of our holding that the Clean Air Act displaces Federal common law, the availability or not of a State lawsuit depends, among other things, on the preemptive effect of the Federal Act. The Court's... I understand the distinction, but isn't there language in the AEP case, I get the AEP case, where the Court says plaintiffs propose that individual Federal judges determine in the first instance what amount of carbon dioxide emissions is unreasonable and then decide what level of reduction is practical. These determinations would be made for defendants named in the two lawsuits. Similar suits could be mounted by the hundreds. Sure, that says Federal, but why couldn't you just plot something in the word State and the same concern would be expressed, wouldn't it? You could argue that the same concerns would be expressed, but... Right. That's why I'm asking, what's your answer to that argument? The answer is found in congressional intent, Your Honor, and the congressional intent is not to do away with the rights of citizens to bring claims. I mean, I see nothing but the plain language contained in the expressions of intent found in these citizen suit exemptions. So you don't have a policy argument. You just have a statute that permits it, basically, is your argument. I have a strong policy argument, but I don't believe... Well, do you have a policy argument that's consistent with the policy argument that was used by the Supreme Court in this case? I keep misciting. AEP. The AEP decision, Your Honor. Yes, there is concern expressed that there would be some impact on... Would you agree that the same concern, although maybe you would say there's explicit language which indicates that they weren't concerned about something that the Supreme Court was concerned about, but you would concede at least that the Court expresses concerns that would apply just as well to the argument that you're making here? If that were true, Your Honor, the Ouellette decision would have been reversed by AEP. And we know that no court in this land has looked at AEP and interpreted it the way in which... I don't understand. I mean, you have a good argument. I just wonder if you have any answer to this argument. It sounds like your argument is, like you say, no, that's a problem, but Congress doesn't worry about it. No, it's not a problem if you apply the law of the source State, where the polluter resides. There is no multiplicity. There's no concern. Well, you can have multiplicity if there's air pollution that goes across the State. You can have hundreds of people that sit in a canteen. That's not multiplicity of regulation. Well, some people would say hundreds, but it's multiple. I don't know. Well, those are multiple claims, but they're not applying a hundred different regulations, and certainly not regulations from other States. AEP did not address the issues that are raised in this case, and its application and concern, while broad, indeed, applies more to interstate pollution problems. And this is not a new... This multiplicity concern that's expressed is not just different rules. They say that the example is two. You'd have two different lawsuits. Similar two different lawsuit pairs would happen. That's right. And maybe there would be hundreds of them. And they would both be based on Federal law, and that's not the situation... No, I understand. That's a clear difference. You say AEP does not apply. What's the best case that you say gives your side the authority here? Judge Siler, I have to agree with Judge Simpson. I think the Bell decision and Her Majesty the Queen's decision, as Judge Simpson said, capture the law, the current law, as it relates to preemption when you're applying the law of the state in which that polluter resides. That is, to my mind, the better cases. The MTVE case, Judge Siler has been criticized as not being an air pollution case, but a water case, because the MBTE fuel additive got into the water supply. But that's not the case. It is, indeed, a Clean Air Act case. It's a lot to get through. It's lengthy. But it rattles and shakes and deals with every single argument raised by the defense in this case, and every single argument raised throughout the land. I also would suggest a read of that amazing Iowa Supreme Court decision in Freeman. It is just a beautiful thing to read and has more... Try to read the opinions that you agree with, wouldn't you? Yes. I guess that's right. I guess that's right. But, indeed, when you've got historic police powers such as we have at issue in this case, and these are historic police powers, and every court has said that they are, historic police powers cannot just be set aside because we're worried about, indeed, multiplicity of regulations or other concerns without finding that intent from Congress. And in this case, Your Honor, it's just not fair. I think we understand your view. Is your time completed now? I don't have any... Okay. Thank you very much, Mr. McClure. You have three minutes for rebuttal. Thank you, Your Honor. We don't dispute that the State police powers are very broad, but it's entirely clear, based on Supreme Court precedent, they have to be consistent with Federal  common law. And I think a great case that the Court needs to pay attention to here is the Guyer v. American Honda Motor case from 2000, which is cited in our brief. In that case, there was an extremely broad savings clause that said compliance with Federal safety standards does not do away with State common law claims. It was a very broad savings clause. And the question before the Supreme Court was, does that do away with ordinary conflict preemption principles? And the Court said, no. We always have to apply conflict preemption principles to any State law to ask whether they're inconsistent with Federal law. That's the whole point of our... You've got to have a conflict, though. You can't just have an additional imposition. An additional imposition is, you know, you can't spend more than 14 cents on this product, and the State says you can't spend more than 12 cents on this product, or 16. They can both be complied with. Right? Those are just... They're not inconsistent. But you could say, well, 14 is inconsistent with 16, but complying with it is not inconsistent. Right? I mean, that's the argument here, is that you've got two schemes. One of them predates the CAA, and one of them is the Clean Air Act. You've just got to comply with them just the way you comply with one and comply with the other. You comply with both of them. But you've got to find something that says they conflict. And what you seem to be relying on is the savings clause, which seems strange. No, we're relying on AEP, too, Your Honor, which talked about... No, but I'm talking about language that conflicts. I'm not talking about case... When I say you're relying, the language you rely on for conflicting is savings. Is there anything else in the language? Something that says, for instance, and this will be all that they're required to do, or this standard is both a minimum and a maximum, or this standard is also something that, if there are no requirements nationwide or something like that, is there something that conflicts so that the judge is being told one thing by the State law and a different thing by the Federal law? Where is that? Well, we've cited an Arbery's Kentucky statute, and this is Chapter 13A, where it says, Administrative regulations shall be no more stringent than the Federal law or regulations. And then there's another provision that says that the agencies are supposed to preserve existing Clean Air Act... Those are Kentucky statutes. I think the question is, is the intention and the wording of the CAA. And I'm looking at the legislative history, and from the Senate report, it says this, the citizens' suit section, would specifically preserve, not allow future legislation, but specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available. Compliance with standards under the Act would not be a defense to a common law action for pollution damages. When that's the legislative history, I'm struggling with your argument. It seems to me that that's just addressed clearly and is explanatory of the words that Well, and the reason I mentioned Guyer, Your Honor, is because that says, that case says very clearly, no matter what the words of the statute says, if there's a conflict between the methods used, the methods used to reach the Federal objective and the State law, you have to have preemption. And what ABC... But doesn't that depend on whether the State and the Federal, the Federal law itself does not envision the right of a State to operate its effective police powers. And in this statute, the statute itself and the history of it has presumed the continuing viability of the use of existing law. And because it's done it that way, because the language speaks that way in the Act, why doesn't that resolve the issue? Well, again, I would say the same thing was at issue in Guyer, Your Honor, and that is a very broad savings clause expressing a congressional judgment that State law has a role, but the Court said you still have to ask the question whether the methods of the Federal statute are consistent. And AEP tells us in this case, I mean, the nuisance claims are not consistent with how Congress chose to regulate their emissions under the Clean Air Act. It's not just a policy issue, it's a conflict. As you have a further question, we seem to be making a response which makes sense, but it's the same response we've been... And if there's nothing further, I think the case will be submitted and we'll hear the next case. Thank you, Counselor. Thank you very much. I appreciate the argument of both Counselors.